County of San Joaquin v. Jones.

---

## COUNTY OF SAN JOAQUIN v. JONES et als.

THE Legislature having by a general law fixed the compensation of County Treasurers at a certain per centage on money received by them, Boards of Supervisors have no power to allow such Treasurers a salary out of the county funds, unless specially authorized by law—and the Act of March 20th, 1855, creating such Boards, confers no such authority.

APPEAL from the Fifth District.

Suit on the official bond of defendant, Jones, as County Treasurer of San Joaquin, for $2,966.78 retained by him as salary during his term of office, out of the county funds.

At the general election of Sept. 2d, 1857, Jones was elected County Treasurer for the term of two years, commencing on the first Monday of October, 1857. On that day, (Oct. 5th) having first executed the bond sued on and taken the necessary oath, he entered upon the duties of the office, and continued to discharge them during the full term of two years. He was succeeded in office by Mark A. Evans, who was duly elected and qualified.

From the first day of February, 1851, to the ninth day of February, 1858, a fixed monthly salary was allowed the County Treasurer, by orders, first, of the Court of Sessions, and then of the

Board of Supervisors, which salary varied between two hundred and one hundred and fifty dollars. The last of these orders is dated December 1st, 1856, wherein it is "ordered that the salary of the County Treasurer of San Joaquin county be, and the same is hereby fixed and established at one hundred and fifty dollars." This monthly sum, under this last order, was the salary of the Treasurer when Jones was elected and entered upon his office ; and he retained for salary at that rate, out of the county funds, from the fifth of October, 1857, to the end of his term in October, 1859, charging the county therewith in his books. February 9th, 1858, the Supervisors passed an order (of which notice was given on that day to Jones) declaring the order of " the first day of December, 1856, fixing the salary of the County Treasurer at one hundred and fifty dollars per month," repealed.

It was known to the Board of Supervisors that Jones retained the salary from October 5th, 1857, to February 9th, 1858, under the order of December 1st, 1856, and they allowed it.

The whole sum thus retained amounted, at the end of the term, to $2,966.78, and the retaining was done by Jones, under the order of December, 1856, but without the further order of the Board of Supervisors, or any warrant or warrants therefor by the County Auditor, and without the knowledge of the Board of Supervisors or the individuals composing it.

The uniform usage and practice for many years in the office of the County Treasurer of San Joaquin has been to retain for Treasurer's salary, from time to time, as the same accrued.

No order was ever given by the Supervisors during Jones' term of office, nor was any warrant or warrants drawn by the Auditor during the same time on Jones, for this retained salary ; nor after Jones' term did Evans, his successor in office, acting either with or without the order of the Supervisors, or warrant of the County Auditor, ever demand this money.

The case was tried by the Court, and judgment given for plaintiff. Defendants appeal.

*Hall & Huggins*, for Appellants.

1. When Jones entered upon the duties of his office there was a

contract between the plaintiff and himself to pay him at the rate of one hundred and fifty dollars per month for his services during his term, and the right to that compensation has never been waived or canceled in any form whatever.

The order of December 1st, 1856, fixing and establishing the salary of the County Treasurer thereafter at one hundred and fifty dollars per month, operated as a proposal by the plaintiff to pay that sum for such official services when performed, and the election and qualifying of Jones in October, 1859, was an acceptance by him of the terms offered ; the subsequent rendition of the services completed his right to receive the stipulated amount.  (Const. of Cal. Art. XI, Secs. 4, 9 ; 15 Cal. 33 ; 2 Kent, 275 ; 9 Cal. 453 ; 16 Id. 208, 211, 255, 267, 273, 283 ; Acts 1850, ch. 15 ; Wood's Dig. arts. 205, 3417–3434, 2117, 3319 ; Angell & Ames on Corp. sec. 292.)   The Board had no power to annul this contract by the repealing order of February, 1858.   (7 Pet. 28 ; 14 Cal. 445.)

2. The power of a county to contract for the services of a County Treasurer has coëxisted with the county itself, and has never been withdrawn by the Legislature.   The percentage allowed by the Act of 1850, (120) is not intended as full compensation for all the duties of that officer, but only for the services rendered in receiving and paying over taxes.  (Const. Art. XI, Secs. 4, 6, 9 ; Act of 1850, Wood's Dig. 712 ; Acts 1850, 149, sec. 56 ; Acts 1855, 129, 151 ; 15 Cal. 295 ; Acts 1850, chs. 21, 42 ; 1855, ch. 71 ; 1854, ch. 79 ; 1857, ch. 261 ; 1856, ch. 130 ; 1858, ch. 215, 235, 176, 335 ; 1859, ch. 314 ; Wood's Dig. arts. 3434 ; Id. sec. 3440.)

*J. G. Jenkins, District Attorney*, for Respondent.

The order of the Board of Supervisors in allowing a salary to the County Treasurer was void.  (*People* v. *Board of Supervisors of El Dorado county*, 11 Cal. 170 ; *Foster* v. *Coleman & Alexander*, 10 Id. 478 ; *Stockton* v. *Shasta county*, Id. 113 ; Wood's Dig. art. 3236, sec. 16.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The defendant retains a sum of money in his hands as County

22

Treasurer of San Joaquin county, claiming that this sum is due to him as his salary, fixed by the Board of Supervisors, by order, as the compensation for this office. The order fixing this sum as salary was made by the board December 1st, 1856.

The main and only question necessasy to be decided is, whether the board had the power to fix this salary.

The general law allows the Treasurer a percentage on the sums received by him as compensation for official services. This board having only special powers given by the Legislature, must find some express authority to make this allowance a debt or charge upon the county finances. But so far from any such authority, it is provided (Wood's Dig. 696) that the Board of Supervisors shall not, for any purpose, contract debts or liabilities except those fixed by or in pursuance of law. The Legislature itself fixed the compensation, which was designed, doubtless, to comprehend the full amount to be paid to the officer; and if the Board of Supervisors could, after this, increase the compensation in favor of the Treasurer, so it could that of the Clerk and Sheriff, and, perhaps, many other officers. We think the doctrine would be dangerous in practice and not warranted in principle. Having fixed the compensation for these officers itself, it can scarcely be presumed the Legislature meant to give to the Supervisors the same power, and we see in the acts cited, no evidence of such purpose. Judgment affirmed.